McGREGOR W. SCOTT
United States Attorney
MIRA CHERNICK
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LAXMIKANTH BIYANI and
AKSHAR PATEL,

    Defendants.

CASE NO. 2:21-cr-0038 TLN

18 U.S.C. § 1956(h) – Conspiracy to Launder Money;
18 U.S.C. § 982(a)(1) – Criminal Forfeiture

# INDICTMENT

The Grand Jury charges:

    LAXMIKANTH BIYANI and AKSHAR PATEL,

defendants herein, as follows:

**INTRODUCTION**

At all times relevant to this Indictment:

1.     Defendants LAXMIKANTH BIYANI and AKSHAR PATEL were residents of the State of New Jersey.

2.     Bitcoin was a type of digital currency. Digital currencies are electronically sourced units of value that exist on the Internet and are not stored in a physical form. They are not issued by any government, but instead are generated and controlled through computer software operating on

decentralized peer-to-peer networks. Users of digital currencies send units of value to and from "addresses," which are unique strings of numbers and letters functioning like a public account number. Digital currency transactions are recorded on a publicly available, distributed ledger, often referred to as a "blockchain." Because digital currencies are transferred peer-to-peer, users can avoid traditional, regulated financial institutions, which collect information about their customers and maintain anti-money laundering and fraud programs.

3. Caller ID Spoofing was when a caller deliberately falsified the information transmitted to a receiver's caller ID display to disguise the identity of the caller. Through Caller ID Spoofing, a criminal could spoof a number from a company or a government agency that a victim may already know and trust. The criminal could then exploit that trust to carry out a scheme to defraud a victim and thereby obtain the victim's money and valuable personal information.

4. CO-CONSPIRATOR 1 was a person unknown to the Grand Jury.

5. The Drug Enforcement Administration (DEA) was an agency within the United States Department of Justice. The mission of the DEA was to enforce the controlled substances laws and regulations of the United States and bring to the criminal and civil justice system of the United States, or any other competent jurisdiction, those organizations and principal members of organizations, involved in the growing, manufacture, or distribution of controlled substances appearing in or destined for illicit traffic in the United States; and to recommend and support non-enforcement programs aimed at reducing the availability of illicit controlled substances on the domestic and international markets. One office of the DEA was in El Paso, Texas.

6. A Gift Card was a form of stored-value access device that could be purchased with money and then used for spending at a particular retailer associated with the Gift Card.

7. VICTIM 1 was a resident of the County of El Dorado, State and Eastern District of California, and had substantial personal assets.

## THE SPECIFIED UNLAWFUL ACTIVITY

8. Beginning on or about October 19, 2020, and continuing through on or about December 15, 2020, persons known and unknown to the Grand Jury, including CO-CONSPIRATOR 1, defrauded VICTIM 1. CO-CONSPIRATOR 1 telephoned VICTIM 1, and, using Caller ID Spoofing to appear to

be calling from the publicly available telephone number of the El Paso, Texas office of the DEA, claimed to be an agent of the DEA. In that assumed guise, CO-CONSPIRATOR 1 told VICTIM 1 that her social security number had been stolen and was in use by a drug cartel, and an arrest warrant had been issued for VICTIM 1 in connection with a drug trafficking investigation. CO-CONSPIRATOR 1 said that to avoid arrest, VICTIM 1 should cooperate with a DEA investigation by transferring large amounts of her money to the DEA for supposed safeguarding until the case and subsequent trial were completed. CO-CONSPIRATOR 1 assured VICTIM 1 that when the case was over, DEA agents would provide VICTIM 1 a new social security number and reimbursement of the funds transferred to them for safeguarding.

9.  CO-CONSPIRATOR 1 instructed VICTIM 1 to withdraw funds from her bank accounts and liquidate her retirement accounts. He further instructed VICTIM 1 to convert the cash withdrawals into Bitcoin and transfer the funds to an account that he designated. He also instructed her to purchase Gift Cards and transmit the numbers to him through text messages. Between October 19, 2020, and November 13, 2020, VICTIM 1 transferred over $300,000 out of her various accounts as instructed by CO-CONSPIRATOR 1.

10. In November of 2020, CO-CONSPIRATOR 1 began instructing VICTIM 1 to transfer money to the DEA by leaving large amounts of currency at a drop location in the parking lot of an elementary school in El Dorado Hills, California. Following CO-CONSPIRATOR 1's instructions, VICTIM 1 left in the elementary school parking lot $70,000 on or about November 20, 2020; $100,000 on or about November 26, 2020; and $100,000 on or about December 4, 2020.

11. BIYANI retrieved each of these currency drops. PATEL assisted BIYANI with the $100,000 currency pickup on or about November 26, 2020.

12. On or about December 14, 2020, CO-CONSPIRATOR 1 contacted VICTIM 1 by telephone and instructed her to deliver $70,000 to the same drop location at the elementary school.

### THE CONSPIRACY TO LAUNDER MONEY

13. Beginning at a time unknown, but no later than on or about November 26, 2020, and continuing through on or about December 15, 2020, in the County of El Dorado, State and Eastern District of California, and elsewhere, defendants LAXMIKANTH BIYANI and AKSHAR PATEL did

INDICTMENT                                    3

knowingly and intentionally conspire and agree with each other and with persons known and unknown to the Grand Jury to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

14. It was a part and object of the conspiracy that defendants LAXMIKANTH BIYANI and AKSHAR PATEL, and other persons known and unknown to the Grand Jury, did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

15. It was further a part and object of the conspiracy that defendants LAXMIKANTH BIYANI and AKSHAR PATEL, and other persons known and unknown to the Grand Jury, did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, and that while conducting and attempting to conduct the financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## MANNER AND MEANS

16. In order to accomplish the objects of the conspiracy to launder money, LAXMIKANTH BIYANI and AKSHAR PATEL retrieved currency left by VICTIM 1 at the drop site in El Dorado Hills, California, and did use and attempted to use layered means outside the banking system to transfer, to other persons known and unknown to the Grand Jury, the proceeds of the scheme to defraud.

17. On or about November 18 and 19, 2020, BIYANI received messages from a co-

conspirator including the amount of currency to be retrieved from the drop site, the home address of VICTIM 1, and a picture of VICTIM 1's driver's license. On or about November 19, 2020, BIYANI flew from Newark, New Jersey to San Francisco, California. On or about November 20, 2020, the day of the drop, BIYANI retrieved the currency drop and confirmed the amount retrieved in a message to a co-conspirator.

18. On or about November 25, 2020, BIYANI planned with a co-conspirator to make another trip to California. On the same date, BIYANI messaged PATEL the address of VICTIM 1 and two screenshots of travel arrangements for a flight from Newark, New Jersey to San Francisco, California on November 26, 2020, returning to New Jersey on November 27, 2020. On or about November 26, 2020, the day of the drop, PATEL drove BIYANI to the drop site, where BIYANI retrieved the currency. BIYANI then confirmed the amount retrieved in a phone message to a co-conspirator.

19. On or about December 2, 2020, BIYANI and another person exchanged phone messages confirming another trip by BIYANI to California. The person confirmed that the amount of currency to be retrieved was $100,000 and BIYANI confirmed he had booked the trip. BIYANI flew from Newark to San Francisco on or about December 3, 2020. That afternoon, BIYANI picked up the cash VICTIM 1 left at the drop site and confirmed the amount received in a message to a co-conspirator. Following the pickup, BIYANI received messages arranging for BIYANI to meet with a co-conspirator in the Los Angeles area.

20. On or about December 15, 2020, PATEL drove BIYANI to the elementary school in El Dorado Hills, California, to retrieve what they expected would be a $70,000 currency drop left by VICTIM 1. BIYANI picked up the package, and he and PATEL drove away from the elementary school intending to deliver the package to another person unknown to the Grand Jury.

FORFEITURE ALLEGATION: [18 U.S.C. § 982(a)(1) – Criminal Forfeiture]

1. Upon conviction of the offense alleged in this Indictment, defendants LAXMIKANTH BIYANI and AKSHAR PATEL shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real or personal, involved in such violation, and any property traceable to such property, including but not limited to the following:

INDICTMENT                                              5

      a.      Approximately $14,903 in U. S. Currency;

      b.      Apple iPhone XS Max, IMEI 357279090454934;

      c.      Apple iPhone 11 Pro, IMEI 353234100826393;

      d.      OnePlus 7Pro, IMEI 867540041601755 & 867540041601748; and

      e.      A sum of money equal to the amount of money involved in the offense, for which defendants are convicted.

2.      If any property subject to forfeiture as a result of the offense alleged in this Indictment, for which defendants are convicted:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b)(1), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ **Signature on file w/AUSA**

_____
FOREPERSON

*[signature]*
McGREGOR W. SCOTT
United States Attorney

No. 2:21-cr-0038 TLN

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

THE UNITED STATES OF AMERICA
vs.

LAXMIKANTH BIYANI and AKSHAR PATEL,

## I N D I C T M E N T

**VIOLATION(S):**  18 U.S.C. § 1956(h) – Conspiracy to Launder Money;
 18 U.S.C. § 982(A)(1) – Criminal Forfeiture

*A true bill,*

/s/ Signature on file w/AUSA

*Foreman.*

*Filed in open court this* \_\_\_ **18th** _____ *day*

*of* \_\_\_**February**\_\_\_\_\_ *, A.D. 20* \_**21**\_\_

*Clerk.*

Bail, $ _____

*ann Clerk* (signature)

Bench warrants for both Ds —
detention/bail TBD at initial
appearance

GPO 863 525

<u>United States v. Biyani, et al.</u>
Penalties for Indictment

**Defendants**
Laxmikanth Biyani
Akshar Patel

| | |
|---|---|
| **COUNT 1:** | **ALL DEFENDANTS** |
| VIOLATION: | 18 U.S.C. §1956(h) – Conspiracy to Launder Money |
| PENALTIES: | Up to 20 years in prison; or<br>Fine of up to $500,000 or up to twice the value of the property involved in the transactions, whichever is greater; or both fine and imprisonment<br>Supervised release of up to 3 years |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

| | |
|---|---|
| **FORFEITURE ALLEGATION:** | **all Defendants** |
| VIOLATION: | 18 U.S.C. § 982(a)(1) – Criminal Forfeiture |
| PENALTIES: | As stated in the charging document |